JOHN DOE on the Demise of MARY J. PATTON vs. RICHARD ROE, Casual Ejector, and JAMES C. DILLON, Tenant in Possession.

New Castle County, February Term, 1894.

**Will, Devise. Trust.**—Where a testator devised all his "property, real, personal, and mixed" to his wife, "for and during the term of her natural life," and appointed a third person "trustee of all my real estate during the life of my wife," also giving to the trustee power to convey in fee simple and providing that he should be justly compensated and be free from responsibility; it was *held* that the legal estate was vested in the trustee during the life of the widow and that she took only an equitable interest.

**Ejectment.**—The devisee of an equitable interest in lands for life, where the legal estate, for the life of such devisee, is vested is a trustee charged with the duties of an active trust and having a power to convey, cannot maintain ejectment against the grantee of the trustee, while the trust estate is outstanding.

**Will. Construction.**—In the construction of a will the intent of the testator when discovered must prevail unless contrary to law.

This was an action of ejectment by which the plaintiff's lessee sought to recover the property, described in the declaration, which was situated in the city of Wilmington, New Castle County. She claimed title under the will of her late husband, Hugh Patton, deceased, and deeds of conveyance to her from the children and residuary devisees of the said decedent. The defendant, James C. Dillon, claimed title under a deed of conveyance from Joseph L. Carpenter, Jr., as trustee under the same will.

The facts were agreed upon by counsel and a case was stated for the opinion of the Court, which was, so far as material, substantially as follows:

Hugh Patton, late of the city of Wilmington, and State of Delaware, being at the time of his death seised in fee of the lands and tenements mentioned in the declaration, died October 19, 1888, leaving a last will and testament, which was executed August 3, 1888, and which after his death was duly proved before and allowed

by the Register of Wills for New Castle county. The provisions of the said will, so far as they are material, with respect to the land in controversy were these:

"Item. I give, devise and bequeath unto my beloved wife Mary Jane Patton, all my property, real, personal and mixed, of whatsoever kind or nature, and wheresoever the same shall be at the time of my death, for and and during the term of her natural life, and the reversion or remainder of the same, after her death, to my said daughters and sons, in common, share and share alike, and their heirs and assigns forever."

"*I hereby authorize and appoint Joseph L. Carpenter, Junior, Trustee of all my real estate during the life of my wife:* At her death it is my wish and desire that said Joseph L. Carpenter, Junior, shall become the true and lawful executor to settle the estate of whatsoever kind remaining accordingly as I have above directed."

"*Said Trustee heretofore appointed shall have full power to make good and sufficient deeds of conveyance, or assurance in the law, to be duly executed, acknowledged and perfected, to grant, convey and assure the same to the purchaser or purchasers thereof in fee simple; said trustee shall be free from all responsibility and be justly compensated out of my estate in his hands.*"

"And I do hereby constitute and appoint my said wife, Mary Jane Patton, sole executrix of this my last will and testament."

The said Hugh Patton left to survive him a widow, the said Mary Jane Patton, and four children, who were his only heirs at law and residuary devisees, to wit; Ella M. Boughman, Retta M. Dillon, Elizabeth G. Patton and Sadie R. Patton. The widow proved the will and letters testamentary thereon were granted to and accepted by her; and Joseph L. Carpenter, Jr., named in said will as trustee, accepted the trust thereby created and has continued to act as trustee under said will.

By deed dated December 24th, 1891, said Joseph L. Carpenter, Jr., claiming to act as trustee under said will, conveyed the premises in dispute in fee simple to James C. Dillon, the defend-

ant, in exchange for other real estate. The consideration expressed in said deed was $2150, and on the same day the said James C. Dillon executed two deeds conveying to said Joseph L. Carpenter, Jr., as trustee the two parcels of land so taken in exchange. The expressed consideration of one of said last mentioned deeds being $2600, and that of the other $1950. No money consideration passed between the parties to said deeds but all of the property included in the exchange being subject to mortgages, the value of the equity of redemption of the lands conveyed by each party to the other was fixed by agreement for the purpose of exchange at the sum of $1850.

After the execution of all the said deeds the said James C. Dillon, during the spring and summer of 1892, made sundry improvements upon the lands so conveyed to him by the said Joseph L. Carpenter, Jr., as trustee.

Subsequently in the year 1892, some question having been suggested as to the right of Joseph L. Carpenter, Jr., as trustee under said will, to execute his deed of December 24, 1891, the said Joseph L. Carpenter, Jr., trustee, reconveyed the lands which had been conveyed to him by the said James C. Dillon as aforesaid, and also the said Joseph L. Carpenter, Jr., as trustee under said will, executed and delivered to the said James C. Dillon a deed of conveyance in fee to the said James C. Dillon, bearing date September 9, 1892, of the lands mentioned and described in the deed of December 24, 1891, from the said Joseph L. Carpenter, Jr., trustee, to the said James C. Dillon. The consideration for the conveyance of September 9, 1892, from the trustee to James C. Dillon was sixteen hundred and fifty dollars, which was paid in cash by James C. Dillon to the trustee.

Of the said sum of sixteen hundred and fifty dollars purchase money as aforesaid the trustee applied the sum of three hundred dollars to the satisfaction of a then existing mortgage against the lands so conveyed to James C. Dillon, and invested the balance, to wit, the sum of thirteen hundred and fifty dollars in two mortgages executed to and now held by him as trustee under said will.

By deed dated July 27, 1892, and duly recorded, the said Ella M. Boughman and John Boughman, her husband, Retta M. Dillon and Francis P. Dillon, her husband, Elizabeth G. Patton and Sadie R. Patton, children and heirs, and residuary devisees of the said Hugh Patton, conveyed all their right, title and interest of, in and to the lands in the declaration mentioned, *inter alia*, to the said Mary Jane Patton, the plaintiff's lessor.

The said James C. Dillon was at the time of the commencement of this suit in the possession of the lands and premises in the declaration mentioned.

*W. S. Hilles*, for plaintiff.

There are two main questions involved.

First, was there any valid power of sale existing in Joseph L. Carpenter, Jr., by any of the provisions of the will of Hugh Patton.

It is not directly decided whether our statute (Revised Code, Ch. 83, § 1) is merely a re-enactment of the English Statute of Uses, 27 Henry VIII, or has an operation much more far-reaching and comprehensive ; *Jones vs. Bush*, 4 Harring. 1. Our statute ·is, however, as comprehensive in executing the use as the English statute.

If the purpose and wording of the English statute or our own be accepted as governing their construction, a modern trust would be an impossibility ; but under the English statute and by implied acceptance of the same construction of our own statute, three cases are excepted from its operation. (1) A use upon a use, where it was early determined that the statute only executed the first use. (2) In the case of a trust of personal property arising from the use of the words " lands, tenements and hereditaments," in the English statute, as well as in our own, and (3) where it is necessary for the trustee or feoffee to uses to have the legal estate for the purpose of complying with some request or direction of the grantor. Hill, Trustees 229.

In this will there is no gift or grant of any estate or interest

in the real estate to Joseph L. Carpenter, Jr., for any purpose whatsoever; there is nothing for him to do requiring that he should possess the legal estate, and a mere naming of one as trustee will not vest the real estate in him unless some act is required to be done by him requiring the possession of a freehold interest; 3 Redf. Wills, 535, § 92; *Oats vs. Cooke*, 3 Burr. 1684.

And even if it be contended that Joseph L. Carpenter, Jr., took an estate in the land by necessary implication, as there are no duties whatever for a trustee to perform, nothing for him to do, no reason why he should have the legal estate, the statute must, of necessity, execute the use and vest the legal as well as the equitable estate in Mary J. Patton; 3 Redf. Wills 531–533, §§ 88, 90, 90a; Theobald, Wills 347; Hill, Trustees 235.

There is an important distinction between a power coupled with an interest and a bare power; Hill, Trustees 235; *Todd vs. Wharton*, 45 N. J. Eq. 723; *Reed vs. Underhill*, 12 Barb. 113; *Guyer vs. Maynard*, 6 Gill. & J. 420; *White vs. Day*, 32 Ohio St. 101; Theobald, Wills 355.

Joseph L. Carpenter, Jr., took no estate or interest in this land whatever, but even granting that he took a power it was a purely naked one, which could not be so exercised as to defeat an estate already granted by the testator, although made by the same instrument; *Quinn vs. Skinner*, 49 Barb. 128; *Marlborough vs. Godolphin*, 1 Eden. 404.

While through the medium of the statute of uses and by way of appointment under the statute an estate vested can be divested by the exercise of a power, yet this could not be done at common law nor by means of any common law conveyance; 4 Kent 331; 1 Cruise, R. P. 289; 1 Chance, Powers 278; Co. Lit. 237 a; 7 Com. Dig. 2; 10 Bac. Abr. 160; Theobald, Wills 458. The same rule applies to wills; 2 Redf. Wills 277, 394, and this is at most a common law power; 4 Kent 323.

The grantor then cannot divest an estate already granted by him by any subsequent limitation; and under a power the grantee

of the power can do nothing which the grantor himself might not have done; Com. Dig. Tit. *Power*, C 1 a.

Again, if there should have been any trust contemplated by the testator it is of a nature so uncertain that it cannot be supported, in which case the property vests in the heirs at law of the testator or the devisee under his will; 2 Redf. Wills 410, 409, note 7; 1 Jarm. Wills 678; 1 Lewin, Trusts 132.

A power of sale depending on a void trust fails with the trust; Perry on Trusts §§ 253, 498, 499; *Penfield vs. Tower*, 46 N. W. Rep. 413.

Where the purposes for which a power was created have ceased or are impossible the power itself fails and cannot be executed; *Jackson vs. Jansen*, 6 John. 73; *Slocum vs. Slocum*, 4 Edw. 638; *Sharpsteen vs. Tillou*, 3 Cow. 651.

It is important to notice in this connection that the power is not given to Joseph L. Carpenter, Jr., by name, but is given to the "trustee above appointed." If there be no trust there can be no trustee, and consequently no donee of the power.

Second. If such power existed could it be exercised during the life time of the widow. It would seem to be clearly not the intention of the testator that any power of sale should be exercised during the life of the wife, if at all, but only for the purpose of settling the estate remaining after the death of the widow. It will be noticed that in this connection the testator appoints his wife, Mary J. Patton, to be his executor. Where the general intention of the testator is apparent from the whole of his will, it will not be permitted that inconsistent provisions, although in a subsequent part of the will should defeat the general intention of the testator; 1 Jarm. Wills 349; 1 Redf. Wills 442, 450; *Barnard's Lessee vs. Bailey*, 2 Harring. 56; *Workman vs. Cannon*, 5 id. 91; *Melvin vs. Halloway*, 2 Houst. 327.

This view of the case is further confirmed by the fact that there is no provision that the trustee should receive any proceeds of sale during the life of the widow. He cannot invest them in his name as trustee, or dispose of the income, and the only reason for

the existence of a power of sale is to facilitate the division of the property at the death of the wife.

Where money is directed by a testator to be laid out in land, or lands are directed to be turned into money, the party entitled to a beneficial interest in either case may, if he elects prevent any conversion of the property from its present state and hold as it is; *Reed vs. Underhill*, 12 Barb. 113; 2 Sto. Eq. Jur. § 793; 1 Rop. Leg. 372.

In case of any doubt in the meaning of a will, the Court will not give such a construction to it as will disinherit the heir at law; *Melvin vs. Halloway*, 2 Houst. 527.

*E. G. Bradford*, for defendant.

I. The plaintiff is not entitled to recover, because, assuming for the sake of the argument that the legal title to the lands in question is not vested in James C. Dillon, such title is now vested in Joseph L. Carpenter, Jr.

This plaintiff in ejectment must recover upon the strength of his own title; and in order to recover, Mary J. Patton must show at the commencement of this suit and now, the legal title to the lands in question with a present possessory right to the same.

If, therefore, title to the lands did not pass to Dillon, the plaintiff could not recover if Carpenter is vested with the legal title to and right of possession of said lands.

That Mr. Carpenter acquired the legal estate and possessory right cannot be doubted upon a fair examination of the will of Hugh Patton. This will must be read between its four corners, and such a construction placed upon its various provisions as will effectuate the general intent of the testator and give force to and harmonize, as far as possible, the several provisions of the will. When this is done it will be clear that the testator intended to and did constitute Joseph L. Carpenter, Jr., the trustee of his lands during the life of the testator's widow.

The contention that there is no gift of any estate or interest in the real estate to Mr. Carpenter; and that even if there were

the statute of uses must have executed the same and vested the legal title in Mary J. Patton, must depend upon the intention of the testator as drawn from the provisions of the will.

If it appear that the testator intended that Carpenter should take the lands and continue to hold them, during the lifetime of Mrs. Patton, unless sooner disposed of under the power, then he not only took the legal estate during the lifetime of Mrs. Patton, but subject to the execution of the power the same remained in him unexecuted and unaffected by the statute of uses. For it is only naked trusts that will be executed by the statute; 3 Redf. Wills 531-3.

If there were a devise to A " to the use of " or " in trust for " B for and during her natural life, it might be conceived that the statute would annex the legal title to the beneficial ownership. But such is not the case here. The testator first shows his intention that his wife should have the beneficial enjoyment of all his property, including his real estate, because he expressly gives it to her " for and during the term of her natural life." But it is evident that the testator did not intend Mrs. Patton to hold the legal title to the real estate, for he subsequently expressly constitutes Mr. Carpenter trustee of the land " during the life of my wife."

It is an elementary rule that in so far as two clauses contained in the will are inconsistent, other things being equal, the latter clause shall prevail over the former. Hence the necessary effect of the two clauses taken together must be to show the intention that Mr. Carpenter should be trustee of that land during the lifetime of the wife, unless it should be sooner disposed of under the power contained in the will.

The statute of uses cannot operate in such a case for the reason that the intention of the testater creates and maintains in the first taker such a legal estate as is inconsistent with the operation of the statute.

That the operation of the statute in the case of testamentary disposition of land depends upon the intention of the testator is well

settled; 2 Washb. R. P. * 138; Hill, Trustees * 234; 1 Sugd. Powers * 172, 175; 4 Kent 323.

And if the intention of the testator was that Mr. Carpenter should be created and continue such trustee the statute could not operate.

It was clearly not necessary for the testator to have used strict words of gift to Mr. Carpenter as trustee, for any words in a will clearly showing the intent of the testator that a person shall have or take his estate will operate by way of gift. And no particular formality is required to create a trust; 3 Redf. Wills 535, §§ 91, 92; Theobald, Wills 346; *Oates vs. Cooke,,* 3 Burrows 1684.

The testator may provide that a certain person shall *have* his lands, or shall become *vested* with his estate, or shall be trustee of his estate, with precisely the same force as if words of strict gift had been used.

But there are provisions in Hugh Patton's will which render it clear beyond controversy that Mr. Carpenter was constituted the trustee of lands in question for the life of Mrs. Patton.

It is admitted that if any active duties were cast upon Mr. Carpenter as trustee in such case, the legal estate would remain vested in him, and such is the law; 1 Perry Trusts. § § 305, 313; 2 Washb. R. P. * 139, 162; 2 Jarm. Wills 144, 146, 147, 149, 150; Hill, Trustees 346, 347.

From the provisions of the will it clearly appears that Mr. Carpenter was appointed an active trustee of the lands, and not a mere dry or naked depository of the legal title thereto. Otherwise what conceivable reason could the testator have had for providing that "said trustee shall be free from all responsibility."

Again, the testator provides that "said trustee shall be justly compensated." Justly compensated for what?—for being a naked or dry trustee without authority or right to do anything and to serve as a mere conduit through which the statute of uses might vest the legal title in Mrs. Patton? Such a contention is simply absurd. When the testator provided that his said trustee should

be compensated he meant that he should be compensated for the discharge of the duties of a trustee.

Again, the testator provides that "said trustees shall be free from all responsibility and be justly compensated out of my estate in his hands."

What estate in his hands? According to the contention of counsel for the plaintiff the statute of uses executes the legal title and there is no estate in the hands of the testator. Yet here is a provision relating to a man whom the testator has expressly constituted as trustee of his real estate only for and during the term of the natural life of his widow, providing for his just compensation out of the testator's estate in his hands. Surely argument is unnecessary to show that the testator intended Mr. Carpenter to be and continue the active trustee of the lands in question during the lifetime of Mrs. Patton, or until said lands should be disposed of under the power contained in the will.

It is contended that the trust is too indefinite to be valid, that the particulars of the trust are not sufficiently pointed out to enable any court to recognize its validity.

But is there indefiniteness in a devise of land to A. as trustee for the testator's wife, during her natural life, and can there be any question about the validity of such a devise? Is it not the duty of A. to collect the rents, and after deducting expenses, pay the net income over to the widow? Can there be a question as to the scope of Mr. Carpenter's duty, viz., to collect the rents, pay the expenses and account for the net income to Mrs. Patton.

It is true that the testator provided that Mr. Carpenter should be his executor; but it is to be borne in mind that Mr. Carpenter was to become executor only at the death of the widow, whom the testator appointed his sole executrix.

The suggestion has been made that the estate in his hands out of which he was to be "justly compensated" might be the estate in his hands as executor after the death of the testator's widow. But to this suggestion the answer is twofold.

*First.* That Mr. Carpenter was constituted trustee only for

the life of the widow, and it was only as trustee that he was to be compensated, and therefore the suggested construction is directly in the teeth of the phraseology of the will.

*Secondly.* That while a provision for just compensation is eminently proper to meet the case of services of a trustee, it would be wholly unnecessary in the case of an executor, whose compensation is fixed by the Register of Wills.

Finally, on this branch of the case it is confidently submitted that the provision, " said trustee shall be free from all responsibility and be justly compensated out of my estate in his hands," taken in conjunction with the other provisions contained in said will relating to the trustee and the trusts, show beyond all peradventure a substantive active trust in Mr. Carpenter accompanied with the legal estate, in so far as the same has not been conveyed to James C. Dillon. This of itself is sufficient to defeat a recovery by the plaintiff.

II. The plaintiff is not entitled to recover because the lands in question and the possessory right thereto have by virtue of an exercise of the power contained in the will of Hugh Patton become vested in James C. Dillon.

It is contended by counsel for the plaintiff that if the provisions of the will contained any valid power to dispose of the lands in question, such power was solely one of sale, and that such power of sale was not intended by the testator to be executed until after the death of his widow. And it is further contended by the plaintiff that the power was a naked one, and as such of no validity as against the gift to Mrs. Patton for life of the residue of the testator's estate.

These objections to the validity of the transfer of the lands in question to James C. Dillon are without legal foundation.

First. Assuming the power to be valid, was it or not solely a power of sale?

No formality is required in the creation of powers ; 4 Kent

319; 2 Wash. R. P. 315; *Dorland vs. Dorland,* 2 Barb. 63, 80; *Cherry vs. Greene,* 115 Ill. 591.

The power conferred is simply, " to make good and sufficient deeds of conveyance, or assurance in the law, to be duly executed, acknowledged and perfected, to grant, convey and assure the same to the purchaser or purchasers thereof in fee simple." Neither the word " sale" nor any equivalent word is used in connection with the power. It is a general power to execute and deliver sufficient deeds of conveyance of the lands of the testator. The power being thus general could be executed by any deed of conveyance for any proper consideration, whether money, goods and chattels, or other lands.

It is not necessary to contend, and no contention is here made, that a power of sale will include a power to exchange.

The only question at this point is whether a general power to execute and deliver good and sufficient deeds of conveyance will or will not embrace deeds supported by a valuable consideration, whether that consideration consists of lands, or goods and chattels, or money.

This power having been conferred upon Mr. Carpenter as trustee, could be executed by him with perfect propriety whether considered in a court of law or of equity, for any consideration which he as trustee and as a reasonable man should consider a proper equivalent.

Certainly the law is well settled that where there are several modes of executing a power and no directions are given as to which mode shall be pursued, the donee may select his own mode; 4 Kent * 341.

Hence there was full authority conferred by the testator upon Mr. Carpenter as trustee to enter into the transaction of exchange of December 27, 1891, and James C. Dillon is now the holder of the legal title to the lands in question.

Second. But if it be assumed that the power in question was only a power of sale, in that case James C. Dillon is the holder of

the legal title to the lands in question under and by virtue of the deed of September 9th, 1892.

If the exchange of December 24th, 1891, was a nullity, Mr. Carpenter as trustee had the right at any time thereafter to properly execute the power of sale, assuming it to be such, and this he did by the deed of September 9th, 1892, receiving for the conveyance a consideration of sixteen hundred and fifty dollars, that sum representing the real value of the premises conveyed.

Here then we have a transaction of sale and conveyance which vested in Mr. Dillon the legal and possessory title to the lands in question, even upon the supposition that the transaction of exchange of December 24th, 1891, was invalid.

Third. The power to convey land conferred upon Mr. Carpenter was to be exercised during the lifetime of Mrs. Patton and not after her death.

This seems to be plain enough from the reading of the will, but the counsel for the plaintiff has made a serious contention that the power, if valid at all, could only be executed after the death of the widow, and gives as his reason that Mr. Carpenter, having been appointed by the testator executor at the death of the testator's widow, and the testator having provided that after the death of his widow his property should go to his sons and daughters in common. share and share alike, that it was for the purpose of making a division among the sons and daughters that Mr. Carpenter was authorized to dispose of the real estate.

It is submitted that this contention on the part of the plaintiff is not only against the letter of the will, but as well in contravention of the manifest purpose of the testator, and in itself utterly unreasonable.

In the first place the testator restricts the authority of Mr. Carpenter as trustee to the period of his widow's lifetime, viz. : " I hereby authorize and appoint Joseph L. Carpenter, Jr., trustee of all my real estate during the life of my wife. * * * Said trustee heretofore appointed shall have full power to make good and sufficient deeds of conveyance, etc."

The testator evidently understood the distinction between the functions of Mr. Carpenter as trustee and as executor.

After appointing his wife the " sole executrix of this my last will and testament" he provided, as was eminently proper he should, for an executorship upon the death of his wife, viz., " At her death it is my wish and desire that said Joseph L. Carpenter, Jr., shall become the true and lawful executor to settle the estate of whatsoever kind remaining, accordingly as I have above directed," and the residue of the estate, consisting of personalty as well as realty, and to be enjoyed by Mrs. Patton during her natural life, it was proper that there should be provided at her death an executor who would then carry into effect the limitations of the will by way of remainder after the widow's life estate; and the testator therefore provided that Mr. Carpenter should be executor at that time.

But the authority to convey the land was expressly conferred upon Mr. Carpenter, *not* as executor but as trustee and his estate and authority as trustee were expressly limited to the lifetime of the widow.

Hence, it would be in absolute violation of the words of the will to hold that the power could be executed by Mr. Carpenter only after he had ceased to be trustee. An instructive case upon this point is *Munson vs. Cole*, 98 Ind. 502.

Again, the manifest purpose of the testator was that Mr. Carpenter, as trustee, should have during the lifetime of Mrs. Patton the right to convert the lands in question into some other and more productive form for the benefit of the widow.

To hold that the testator created a trust and conferred a power, to dispose of the land, upon Mr Carpenter to be exercised only after the death of the principal beneficiary is clearly inconsistent with the broad purpose of the testator.

Again, the contention made upon this point by the counsel for the plaintiff is absolutely unreasonable.

While there is strong reason that the power to dispose of the lands should exist in the trustee during the lifetime of the widow,

there is no reason why there should be a power in the trustee to dispose of the lands after the death of the widow.

During her lifetime it might be of the utmost importance that the land should be converted into a more profitable fund for the benefit of the widow; but this could not be accomplished without such a power in Mr. Carpenter during the widow's lifetime, unless indeed by the voluntary action of all the parties in interest and *sui juris*.

But there is no conceivable reason why a power of sale should exist after the death of the widow; for under the will all the real estate immediately upon her death is given by the testator "to my said daughters and sons, in common, share and share alike, and their heirs and assigns forever."

There is thus at the death of the widow an immediate gift of the lands of the remaindermen without the intervention of any trust and with absolutely no consideration requiring the existence at that time of such a power as was conferred upon Mr. Carpenter during the lifetime of Mrs. Patton.

There being no trust after the death of Mrs. Patton, and the gift of the real estate to the children being immediate and in kind, and the real estate at that time not being tied up or fettered in any manner, it is impossible to conceive of any reason why the power given to Mr. Carpenter as trustee to dispose of the lands in question should refer to a period after the death of Mrs. Patton and not to the period of her lifetime.

The following cases strongly support the proposition that the power could be executed only during the lifetime of Mrs. Patton. *Fidler vs. Lash*, 125 Pa. 87; *Wilkinson vs. Buist*, 124 *id.* 253.

Fourth. The power conferred upon Joseph L. Carpenter, Jr., as trustee, to convey the lands in question during the lifetime of Mrs. Patton, who under the will was beneficially interested in those lands for the term of her natural life, was valid.

The distinction between common law powers and powers operating under the statute of uses is well established; 4 Kent *316, 323; 2 Wash. R. P. *319.

While powers operating under the statute of uses require a seisin in someone ready to serve the use created by the appointment and commensurate with the estates authorized to be created under the powers, common law powers or authorities require no such seisin and have validity according to the intention of the creator of the powers. Here admittedly the power conferred upon Mr. Carpenter was a common law power in contradistinction to a power operating under the statute of uses. But it is contended that the power in question was a naked power and was without validity as against the interest and estate given by the testator to his widow; and further that the exercise of such power would be repugnant to the estate taken by the widow. The answer to this is that the power in question was not a naked power, Mr. Carpenter having vested in him the legal title to the land to which the power related.

But even if the power was a naked power there can be no reason to doubt its validity. Its exercise could not be repugnant to the estate devised to the widow in any legitimate sense of that term.

While it is true that if a man devises Black-acre in fee simple to A, a provision that neither A nor his heirs or assigns shall ever cut down a certain grove of trees situate thereon would be void as repugnant to the estate devised, no such objection can legitimately be made to the exercise of a power by which either the form of property bequeathed or devised is changed from personalty to realty, or from realty to personalty, or by which estates devised in and by the same will containing the power are cut down or defeated.

The question in each case is as to the will of the testator, and if it appears that his intent was to confer a power to dispose of land such power, though naked, is good as against the devisees of that land.

This proposition in the light of authority as well as of reason can no longer be treated as open to question. The unanimity of judicial decisions upon this point is overwhelming; *Crittendon vs. Fairchild*, 41 N. Y. 289; *Kinnier vs. Rogers*, 42 *id.* 531; *Wilkin-*

*son vs. Buist,* 124 Pa. 253 ; *Fidler vs. Lash,* 125 *id.* 87 ; *Hoyt vs. Day,* 32 Ohio St. 101 ; *Hollman vs. Tigges,* 42 N. J. Eq. 127 ; *Guyer vs. Maynard,* 6 Gill & J. 420 ; 2 Wash. R. P. *319.

·By way of answer to the above cited authorities, counsel for the plaintiff has referred to and laid stress upon *Quinn vs. Skinner,* 49 Barb. 128.

With respect to that case it is sufficient to say : 1. That statutory enactments in New York largely entered into the determination of the case.

2. That if it could be treated as an authority in any sense it would militate against the contention of the counsel for the plaintiff that the power could only be executed, if at all, after the death of Mrs. Patton.

3. That *Quinn vs. Skinner* has been, politely though none the the less effectually, disapproved of and overruled in *Crittendon vs. Fairchild,* 41 N. Y. 289, and *Kinnier vs. Rogers,* 42 *id.* 531 ; both of these cases proceeding upon the broad ground taken on behalf of the defendant in this case that such a power is valid notwithstanding a devise made in the same will creating the power. It further appears among the errata on page 4 of 50 Barbour that Lott, C. J., should have been noted as dissenting in the case of *Quinn vs. Skinner.*

There were many books referred to by the counsel for the plaintiff, such as, 10 Bac. Abr. 160 ; 7 Com. Dig. C 1 a.; Theobald, Wills 458, &c., to which it is unnecessary to refer more particularly as they do not seem to have any connection with the case.

It necessarily results : 1. That the plaintiff cannot recover in this action, because the legal title and possessory right to the lands in question, if not vested in James C. Dillon, are vested in Joseph L. Carpenter, Jr., as trustee during the natural life of Mary Jane Patton, who is still living.

2. That by virtue of an exercise of the power conferred upon Joseph L. Carpenter, Jr., as trustee under Hugh Patton's will, the legal title and possessory right to the said lands are and were at

the time of the commencement of this suit vested in James C. Dillon.

*June 8, 1894.*

LORE, C. J., delivered the opinion of the Court.

In actions of ejectment, the plaintiff must recover upon the strength of her own title and not upon defects in the title of others. Her title depends upon the estate that she took under the will of her deceased husband.

The main question therefore is, what estate did she take?

The authorities have evidently been examined with care and the law presented and urged with great force by counsel in the case. No parallel case has been produced, and we are left to interpret the will under general rules.

All these rules go to ascertain the intent of the testator from the language used; which intent when discovered must prevail, unless contrary to law.

The testator says, " I give, devise and bequeath unto my beloved wife Mary Jane Patton, all my property, real, personal, and mixed, of whatsoever kind and nature and wheresoever the same shall be at the time of my death, for and during the term of her natural life." " I hereby authorize and appoint Joseph L. Carpenter, Jr., trustee of all my real estate during the life of my wife; " " said trustee heretofore appointed shall have full power to make good and sufficient deeds of conveyance, or assurances in law, to be duly executed, acknowledged and perfected; to grant, convey and assure to same to the purchaser or purchasers thereof in fee simple; said trustee shall be free from all responsibility and be justly compensated out of my estate in his hands."

By express terms therefore the testator gives to his said wife a life interest in all his property, real, personal, and mixed.

By like express words, he authorizes and appoints Joseph L. Carpenter, Jr., to be his trustee of all his real estate during the life of his wife, giving said trustee full power to make good and sufficient deeds of conveyance, to transfer said property to the pur-

chaser in fee simple; free from all responsibility and provides compensation for said trustee out of the estate in his hands.

The plain interpretation of this express language clothes the said Joseph L. Carpenter, Jr., trustee, with the legal estate of testator's realty and gives the widow the beneficial interest and equitable estate therein. Careful consideration of the language leaves no other tenable conclusion.

The will contemplates and provides active duties for said trustee, grants him immunity from all errors and mistakes, and provides for him full compensation.

If the testator had wished to give his wife the full proceeds of his real estate for her life for the betterment of her condition, and to provide for changing unproductive into productive property, so that her income might be increased in certain exigencies, the appointment of a trustee, with the powers named in the will, would be a most convenient and not unusual way of effecting such purpose.

It would interpose between the life tenant and the residuary devisees, the judgment and interposition of a disinterested trustee to make the change and yet protect the interests of all concerned. This would hardly defeat the estate of the widow, but would rather tend to make it more flexible and beneficial.

But aside from this, we have the unequivocal language of the testator, indicating what seems to us to be an active trust in said Joseph L. Carpenter, Jr. We are therefore of opinion that under the terms of the will, during the life of the widow, the legal estate vested in the said Joseph L. Carpenter, Jr., and that the said widow took only an equitable interest thereunder for her life.

This view of the case makes it unnecessary to discuss the other questions raised in the case, inasmuch as the plaintiff cannot recover in this action with the legal estate outstanding in Joseph L. Carpenter, Jr., trustee, under the will.

Judgment must therefore be entered for the defendant.